JOHN-LOUIS H. DELL, ESQ. (SBN 344873)
Email: John@Louisdell.com
LOUIS P. DELL, ESQ. (SBN 164830)
Email: Ldell@Louisdell.com
LAW OFFICE OF LOUIS P. DELL
715 South Victory Blvd.
Burbank, CA 91502
(818)478-2822

Attorney for Plaintiffs,
ANI ARATOUNIANS,
NILTON NEYRA RAMOS

## IN THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANI ARATOUNIANS,<br>NILTON NEYRA RAMOS,<br>                   Plaintiff,<br><br>   vs.<br><br>K MOTORS SJS, LLC, dba<br>GLENDALE NISSAN,<br>NISSAN MOTOR ACCEPTANCE<br>COMPANY LLC,<br>GREAT AMERICAN INSURANCE<br>COMPANY, AND DOES 1-10,<br><br>                Defendants. | CASE NO.<br><br>COMPLAINT FOR DAMAGES,<br>INJUNCTION and DEMAND FOR<br>JURY TRIAL |

     Plaintiff, ANI ARATOUNIANS, NILTON NEYRA RAMOS, by their attorney, states as follows:

Law Office of Louis P. Dell
Attorney and Counselor at Law

**INTRODUCTION**

1.    This action arises from a deceptive vehicle lease scheme perpetrated by K Motors SJS, LLC dba Glendale Nissan ("Glendale Nissan"), through its General Manager and its Finance Manager, against Plaintiffs. In June 2025, Glendale Nissan induced Plaintiffs to sign two separate lease agreements for the same vehicle under false pretenses. The dealership falsely claimed that the second lease was required to "correct a clerical error," when in fact it materially worsened Plaintiffs' financial position—rolling prior lease debt into the new transaction, inflating the capitalized cost, reducing the trade-in credit, and leaving Plaintiffs liable for a $9,454.96 invoice on her prior lease that Glendale Nissan had promised to pay off.

2.    The conduct at issue is not an isolated mistake. Glendale Nissan was previously the subject of a Federal Trade Commission enforcement action (*FTC v. Universal City Nissan, Inc., et al.*, Case No. 2:16-cv-07329-CAS (C.D. Cal.)), resulting in a Stipulated Order for Permanent Injunction and Monetary Judgment entered in 2017 that permanently enjoined the dealership and its officers from engaging in precisely these types of deceptive leasing and "yo-yo financing" practices. Despite that injunction, Defendants knowingly repeated the same conduct in Plaintiff's transaction—misrepresenting lease costs, payoff obligations, and trade-in credits.

3.    Through this Complaint, Plaintiffs seeks rescission of the fraudulent lease agreements, restitution of all monies paid, damages for violations of the Consumer Legal Remedies Act (Civ. Code §1750 et seq.), the Truth in Lending and Consumer Leasing Acts (15 U.S.C. §§1601, 1667 et seq.), the Unfair Competition Law (Bus. & Prof. Code §17200 et seq.), and Vehicle Code §11711, as well as punitive damages for Defendants' willful and malicious conduct

COMPLAINT FOR DAMAGES, INJUNCTION AND DEMAND FOR JURY TRIAL

Law Office of Louis P. Dell
Attorney and Counselor at Law

and enforcement of the surety bond issued for Glendale Nissan's dealership license.

## PARTIES

4.     Plaintiff, ANI ARATOUNIANS, is a natural person, and resides in the State of California, County of Los Angeles.

5.     Plaintiff, NILTON NEYRA RAMOS, is a natural person, and resides in the State of California, County of Los Angeles.

6.     Plaintiffs ANI ARATOUNIANS and NILTON NEYRA RAMOS are married to each other and hereinafter collectively referred to as "Plaintiffs" and, where appropriate, individually as "Plaintiff."

7.     Defendant K MOTORS SJS, LLC, doing business as GLENDALE NISSAN ("Glendale Nissan"), is, and at all relevant times was, a California limited liability company engaged in the business of selling and leasing new and used motor vehicles to consumers. Glendale Nissan holds California Vehicle Dealer License No. 98200, issued by the Department of Motor Vehicles, with its principal place of business at 727 South Brand Boulevard, Glendale, California 91204.

8.     Defendant NISSAN MOTOR ACCEPTANCE COMPANY LLC ("NMAC") is, and at all relevant times was, a Delaware limited liability company authorized to do business in California, acting as the finance and leasing arm of Nissan North America, Inc. NMAC is the assignee and creditor for vehicle retail and lease contracts originated by authorized Nissan dealerships, including Glendale Nissan, and is subject to the Consumer Leasing Act (15 U.S.C. §§ 1667–1667f).

9.     Defendant GREAT AMERICAN INSURANCE COMPANY ("GAIC") is, and at all relevant times was, an Ohio corporation authorized to transact surety business in California. GAIC is the surety on Glendale Nissan's motor

Law Office of Louis P. Dell
Attorney and Counselor at Law

vehicle dealer bond, Bond No. F364270, issued pursuant to California Vehicle Code § 11710, guaranteeing payment of loss or damage to any person arising from Glendale Nissan's fraudulent representations or statutory violations in the sale or lease of motor vehicles.

10.    Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1 - 10, and therefore sues these defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner to Plaintiffs as hereinafter alleged, and that Plaintiff's damages as herein alleged were proximately caused by their conduct.

11.    At all relevant times, Defendants acted jointly and in concert in offering, negotiating, and servicing the lease transaction described herein.

## FACTUAL ALLEGATIONS

### The Initial Lease – June 16, 2025

12.    On or about June 16, 2025, Plaintiffs entered into a motor vehicle lease agreement with Glendale Nissan for a 2025 Nissan Ariya (the "Vehicle").

13.    The lease disclosed a gross capitalized cost of $47,427.00, a capitalized cost reduction of $18,470.22, an adjusted capitalized cost of $28,956.78, and a monthly payment of $283.64.

14.    Plaintiffs relied on Glendale Nissan's representations made by the General and Finance Managers that this lease was final, accurate, and included the payoff of two existing vehicles:

      a.    The 2023 Nissan Ariya 2WD (leased through NMAC, near end of term and slightly over the mileage limit); and

Law Office of Louis P. Dell
Attorney and Counselor at Law

b.   The Lexus trade-in, which had equity of approximately $4,799.59.

15.    Plaintiffs returned both vehicles to Glendale Nissan and took delivery of the new 2025 Ariya on the understanding that the dealership would pay off the prior balances and apply the Lexus equity toward the new lease.

### The "Clerical Error" Call – June 27, 2025

16.    Approximately eleven days later, on June 27, 2025, Glendale Nissan's finance manager telephoned Plaintiff Aratounians while she was at work.

17.    The manager stated that there had been a "clerical error" in the June 16 paperwork involving the date and monthly payment, and that she needed to re-sign the contract immediately to correct the mistake.

18.    He explained that the new monthly payment would be $479.46, and assured her that the change reflected only the inclusion of payoff amounts for her Lexus trade-in and prior NMAC lease, emphasizing that "everything would be paid off" and she "would owe nothing further."

19.    Plaintiff Aratounians was at her workplace, under time pressure, and unable to review the contract in person. She received it by email, briefly skimmed it, and signed electronically based on the finance manager's representations.

20.    At the time, she had no vehicle other than the leased 2025 Ariya, and was dependent on it for her employment as Director of Nutrition Services at the Los Angeles Regional Food Bank.

21.    Similarly, the dealer gave the same reasons to Plaintiff Ramos who signed because he was under the same impression has his spouse.

22.    The new contract, unbeknownst to Plaintiff, materially changed the terms of the transaction:

Law Office of Louis P. Dell
Attorney and Counselor at Law

a.   the gross capitalized cost increased to $49,407.00;

b.   the capitalized cost reduction decreased to $14,355.58;

c.   the adjusted capitalized cost increased to $35,051.42;

d.   a $1,980 "Prior Lease Balance" was added; and

e.   the monthly payment increased to $479.46, raising the total lease obligation by thousands of dollars.

23.   Glendale Nissan did not provide a revised disclosure or explain these changes before securing Plaintiff's signature.

24.   As part of the June 27, 2025 lease transaction, Glendale Nissan appraised Plaintiffs' Lexus trade-in at $25,000 and paid $20,211.37 to Plaintiffs' credit union to satisfy the outstanding loan balance. However, in the second lease contract ("Contract V2"), the dealership recorded a false "payoff" amount of $26,980, thereby fabricating $6,768.63 in negative equity that did not exist. This misrepresentation inflated the gross capitalized cost of the new lease and increased Plaintiffs' monthly payment, concealing the true value of their trade-in and constituting a deceptive act

25.   The inflated $26,980 payoff recorded in Contract V2 directly increased the gross capitalized cost and monthly payment under the new lease. Whereas Plaintiffs' initial June 16, 2025 contract reflected a monthly payment of $283.64, the second contract required $479.46 per month—an increase of nearly $200 monthly and more than $7,000 in additional payments over the lease term. This undisclosed rollover of nonexistent "negative equity" artificially inflated the total lease obligation, deprived Plaintiffs of the true benefit of their trade-in, and constituted a material misrepresentation and concealment of finance charges.

26.   By misrepresenting the payoff amount and increasing the monthly lease payment, Glendale Nissan induced Plaintiffs to execute Contract V2

Law Office of Louis P. Dell
Attorney and Counselor at Law

under false pretenses, believing it merely corrected clerical errors rather than creating a substantially higher financial obligation. Plaintiffs relied on the dealership's representations that the prior lease and trade-in balances would be fully paid off and that the revised contract was necessary only for administrative reasons. In reality, the inflated payoff and concealed negative equity locked Plaintiffs into an unfavorable lease they never would have accepted had the true terms been accurately disclosed. These actions were deceptive and unconscionable, and were carried out with the intent to mislead Plaintiffs in violation of the CLRA, TILA, and Consumer Leasing Act.

**The Surprise NMAC Invoice and Continuing Harm**

27.    On or about August 29, 2025, Plaintiffs received an invoice from NMAC demanding $9,454.96 for unpaid charges on her prior 2023 Nissan Ariya lease.

28.    This invoice revealed that Glendale Nissan had not paid off the prior lease as promised, despite expressly representing that the new lease included that payoff.

29.    Plaintiffs was left with ongoing liability to NMAC for the old lease in addition to the obligations under the new lease — effectively being charged twice.

30.    Plaintiffs promptly contacted NMAC and Glendale Nissan to resolve the matter but was met with confusion and denial of responsibility.

**Misrepresentations Regarding Payoff Obligations**

31.    After executing the June 27, 2025 rewritten lease, Plaintiff Ani Aratounians communicated by text with Armen, an authorized sales representative of K Motors SJS, LLC dba Glendale Nissan, concerning the payoff of her prior 2023 Nissan Ariya lease and Lexus trade-in.

COMPLAINT FOR DAMAGES, INJUNCTION AND DEMAND FOR JURY TRIAL

Law Office of Louis P. Dell

Attorney and Counselor at Law

32.     During these exchanges, Armen unequivocally confirmed that the dealership, not Plaintiff, was responsible for paying off the prior lease and trade-in obligations. When Plaintiff asked, *"I don't have to pay the bill, right?"* Armen replied, *"No."*

33.     Armen further instructed Plaintiff that if Nissan Motor Acceptance Corp. ("NMAC") sent any invoice, *"take a picture and send it to me,"* and reiterated, *"Most likely not, but if they do [send a bill] send it to us."*

34.     Plaintiff later texted, *"I just want to make sure we aren't responsible for this bill as was said to us when we leased the new Ariya."* Armen's responses confirmed that Glendale Nissan had represented she would owe nothing further on her prior lease or trade-in balances.

35.     When Plaintiff subsequently received an invoice from NMAC demanding approximately $9,454.96 for the unpaid balance on her prior lease, she contacted Armen. He replied, *"We just had a change in finance management. We will reach out to you on Monday and resolve this."*

36.     Plaintiff followed up asking when the dealership would transmit payment to NMAC. Armen responded, *"My manager will turn it to the business office Monday first thing in the morning and they will contact you."* He later identified Luis Santillan, the dealership's General Manager, as the person with authority to finalize the payoff, stating, *"Only general manager has authorization. I promise you they will get in touch with you on Monday."*

37.     In later correspondence, Armen acknowledged that the situation may have been *"a mistake that was done when my new lease contract was created,"* effectively conceding that the dealership—not the customer—had erred in failing to satisfy the prior obligations.

38.     These communications constitute express admissions and confirmations that Glendale Nissan agreed and undertook to pay off

– 8 –

Plaintiff's prior 2023 Nissan Ariya lease and Lexus trade-in as part of the June 2025 transaction. Plaintiff relied on these statements in entering the rewritten lease and in refraining from independently paying the prior obligations.

39.    Defendants' subsequent failure to honor those payoff promises and their continued billing by NMAC caused Plaintiffs confusion and stress from the risk of financial harm, including liability for $9,454.96, loss of $4,799.59 in trade-in equity, and increased lease payments under the rewritten contract.

## Prior FTC Enforcement and Pattern of Misconduct

40.    Glendale Nissan was one of several dealerships expressly named in a federal enforcement action by the *Federal Trade Commission in Federal Trade Commission v. Universal City Nissan, Inc., et al.*, Case No. 2:16-cv-07329-CAS (C.D. Cal.).

41.    On March 22, 2017, the United States District Court for the Central District of California entered a Stipulated Order for Permanent Injunction and Monetary Judgment against Glendale Nissan/Infiniti, Inc. and related corporate entities.

42.    The federal order permanently enjoined Glendale Nissan and its officers, agents, and employees from:

   a.    misrepresenting the cost of leasing a vehicle, including total due at lease inception, down payment, acquisition fees, or other amounts;

   b.    falsely stating that the dealer would pay off a consumer's prior loan or lease balance;

   c.    failing to clearly and conspicuously disclose all material terms of a consumer lease under Regulation M (12 C.F.R. § 213) and the Consumer Leasing Act (15 U.S.C. §§ 1667–1667f);

Law Office of Louis P. Dell
Attorney and Counselor at Law

Law Office of Louis P. Dell
Attorney and Counselor at Law

d.   engaging in "yo-yo" practices, including pressuring consumers to re-sign contracts after delivery under the pretext of financing errors; and

e.   disposing of trade-in vehicles before financing was finalized.

43.   The injunction was entered after the FTC charged Glendale Nissan and affiliated dealerships with deceptive and unfair acts and practices in violation of Section 5 of the FTC Act (15 U.S.C. § 45(a)), TILA (15 U.S.C. §§ 1601–1666j), and the Consumer Leasing Act (15 U.S.C. §§ 1667–1667f). The Commission alleged that the defendants routinely misled consumers about lease costs, trade-in payoffs, and mandatory add-ons.

44.   The permanent injunction required Glendale Nissan to obtain express, informed consent from consumers before charging for any add-on products or services, to clearly disclose lease costs, and to cease misrepresenting consumers' obligations relating to prior loans or leases.

45.   Despite the permanent injunction, Glendale Nissan, through its employees Luis Santillan and its Finance Manager, Peter Spahier, and Sales Manager, Armen Megerdich, engaged in the same type of deceptive and coercive "yo-yo" leasing practices expressly prohibited by the federal court order.

46.   Defendants' misconduct in Plaintiff's transaction—including requiring her to re-sign under false pretenses, altering financial terms, concealing payoff obligations, and disposing of her trade-in equity— demonstrates a knowing and willful violation of prior federal injunctions and a continuing pattern of unlawful conduct.

47.   Defendants' actions were intentional, knowing, and part of a pattern and practice of rewriting leases under false pretenses, misrepresenting payoffs, and shifting hidden negative equity to consumers — conduct specifically

prohibited under the Consumer Leasing Acts and Consumer Legal Remedies Act.

48.    This prior judgment establishes that Glendale Nissan had actual notice that such conduct violated federal and state consumer protection laws, and its repetition in Plaintiff's case evidences malice, oppression, and intent to defraud within the meaning of Civil Code § 3294.

### CLRA Demand and Defendants' Noncompliance

49.    On August 28, 2025, Plaintiff's counsel sent a written demand for correction to Glendale Nissan and NMAC pursuant to Civil Code § 1782, identifying the deceptive and unlawful practices and offering to resolve the matter amicably.

50.    Defendants did not timely or adequately respond within the 30-day statutory period.

51.    More than 30 days later, Plaintiff's counsel was contacted by an individual identifying himself as an "investigator" for NMAC, who requested that Plaintiffs sign an affidavit describing what happened and indicate whether she wanted to return the car or keep it.

52.    This contact reflected Defendants' continued failure to accept responsibility or provide the corrective action required under the CLRA and leasing statutes.

### Resulting Harm

53.    As a result of Defendants' actions, Plaintiffs suffered financial and personal harm, including:

        a.  loss of the $4,799.59 Lexus equity;

        b.  assumption of liability for $9,454.96 owed on her prior lease;

Law Office of Louis P. Dell
Attorney and Counselor at Law

c. increased monthly lease payments and inflated total cost;

d. loss of the benefit of her bargain; and

e. emotional distress and inconvenience resulting from Defendants' deceptive and coercive conduct.

f. incidental damages including but not limited to payment of governmental fees and taxes, insurance, maintenance and so on.

g. consequential damages, including but not limited to adverse credit reporting, increased financing costs, and other foreseeable harm proximately resulting from Defendants' fraudulent and unlawful acts.

h. The false $26,980 payoff entry caused Plaintiffs to lose the $4,799.59 in equity from their Lexus trade-in and to assume $9,454.96 in new liability on their prior lease, while committing to an inflated lease obligation more than $7,000 above the original contract.

54.  The acts of Defendant K Motors SJS LLC dba Glendale Nissan were carried out, authorized, and ratified by its managing agents and officers, including General Manager Luis Santillan and the dealership's Finance Manager, who possessed discretionary authority over consumer leasing and financing decisions. These individuals intentionally misrepresented to Plaintiffs that a second lease contract was necessary only to correct clerical errors, when in fact it materially increased Plaintiffs' financial obligations and concealed additional charges.

55.  The acts described were not isolated, but consistent with dealership practices previously addressed by federal enforcement actions and reflect a pattern of willful disregard for consumer rights. Defendant's managing agents,

COMPLAINT FOR DAMAGES, INJUNCTION AND DEMAND FOR JURY TRIAL

Law Office of Louis P. Dell
Attorney and Counselor at Law

with knowledge of prior regulatory findings, nonetheless ratified the conduct alleged herein."

56.   Plaintiffs seek punitive and exemplary damages pursuant to Civil Code § 1780(a)(4) for Defendants' willful, malicious, and fraudulent conduct, including repeated "yo-yo" financing practices and other deceptive acts carried out with conscious disregard of Plaintiffs' rights, in an amount sufficient to punish and deter similar misconduct in the future.

## FIRST CAUSE OF ACTION

## (Violations of the Federal Consumer Leasing Act, 15 U.S.C. §§ 1667–1667f, and Regulation M, 12 C.F.R. Part 1013)

57.    Plaintiffs reallege and incorporate by reference all preceding paragraphs.

58.    This cause of action is asserted against Glendale Nissan and Nissan Motor Acceptance Corp. and DOES 1-10.

59.    The June 16 and June 27, 2025 lease agreements for the 2025 Nissan Ariya constitute "consumer lease" transactions within the meaning of 15 U.S.C. § 1667(1) and 12 C.F.R. § 1013.2(e). Defendant Glendale Nissan is a "lessor," and Defendant Nissan Motor Acceptance Corp. ("NMAC") is an assignee and creditor subject to the Act.

60.    The Consumer Leasing Act and Regulation M require that, before consummation, the lessor provide the lessee a single, clear, written disclosure statement accurately setting forth:

a.    the amount due at lease signing or delivery (12 C.F.R. § 1013.4(b));

COMPLAINT FOR DAMAGES, INJUNCTION AND DEMAND FOR JURY TRIAL

Law Office of Louis P. Dell
Attorney and Counselor at Law

Law Office of Louis P. Dell
Attorney and Counselor at Law

b.    the itemization of the gross capitalized cost and capitalized-cost reduction, including any trade-in allowance or payoff of a prior obligation (12 C.F.R. § 1013.4(d)(2));

c.    the total of periodic payments and other charges (12 C.F.R. § 1013.4(f)–(m)); and

d.    all other material terms required by 15 U.S.C. § 1667a.

61.    Defendants violated these provisions by:

a.    Requiring Plaintiffs to execute two lease contracts for the same vehicle—June 16 and June 27, 2025—each containing materially different figures for gross capitalized cost, capitalized-cost reduction, adjusted capitalized cost, and monthly payment, without furnishing new or corrected Regulation M disclosures prior to the second execution;

e.    Failing to itemize or accurately disclose the payoff of Plaintiff's prior NMAC lease and the Lexus trade-in, and by instead rolling approximately $1,980 in prior lease balance into the new contract while leaving an additional $9,454.96 unpaid, later billed to Plaintiff;

f.    Misrepresenting that the June 27 contract was a "clerical correction" rather than a new lease with changed economics, thereby obscuring required disclosures;

g.    Including a "Prior Lease Balance" entry on the face of the instrument without identifying the underlying obligation, payoff amount, or to whom it was owed, rendering the disclosure unclear and incomplete in violation of § 1013.4(b)(6) and (d)(1)(ii);

h.  Failing to provide updated disclosures when the first contract was rewritten and replaced, contrary to § 1013.3(a)(2); and

i.  Engaging in oral and written misrepresentations of lease terms and payment obligations, including the recording of a false "payoff" of $26,980 for Plaintiffs' Lexus trade-in—although the vehicle was appraised at $25,000 and only $20,211.37 was paid to the credit union—thereby fabricating more than $6,700 in negative equity. This inflated payoff was rolled into the new lease and directly increased the gross capitalized cost and monthly payment from $283.64 to $479.46, concealing the true value of Plaintiffs' trade-in. Such conduct violated the single-document requirement (12 C.F.R. § 1013.3(a)(1)) and the duty to provide clear and accurate itemization of gross capitalized cost and trade-in credits (12 C.F.R. § 1013.4(d)(2)), constituting deceptive leasing practices under 15 U.S.C. § 1667d and 12 C.F.R. § 1013.7.

62.  NMAC, as assignee, is liable under 15 U.S.C. § 1667c and § 1641 because the disclosure violations are apparent on the face of the lease contracts it accepted and enforced.

63.  As a direct and proximate result of Defendants' violations, Plaintiffs suffered actual damages, including but not limited to:

a.  payment of increased monthly charges and down-payment amounts;

b.  continued liability on the prior lease;

c.  loss of trade-in equity; and

d.  emotional distress, inconvenience, and credit harm.

– 15 –

**SECOND CAUSE OF ACTION**

**(Violation of the Truth in Lending Act – 15 U.S.C. §§ 1601 et seq.; 12 C.F.R. Part 1026 [Regulation Z])**

64.   Plaintiffs reallege and incorporate by reference all preceding paragraphs.

65.   This cause of action is asserted against Glendale Nissan and Nissan Motor Acceptance Corp. and DOES 1-10.

66.   At all relevant times, Defendant K Motors SJS, LLC dba Glendale Nissan ("Glendale Nissan") was a creditor within the meaning of 15 U.S.C. § 1602(g) and 12 C.F.R. § 1026.2(a)(17), as it regularly extended consumer credit payable in more than four installments or subject to a finance charge.

67.   Plaintiffs are consumers within the meaning of § 1602(i) who obtained credit for personal, family, or household purposes in connection with the June 16 and June 27, 2025 transactions for a 2025 Nissan Ariya.

68.   Defendants violated the Truth in Lending Act and Regulation Z by engaging in the following unlawful acts and omissions:

   a.   Failure to clearly and conspicuously disclose the finance charge and annual percentage rate (APR) applicable to the lease/credit transaction, in violation of 15 U.S.C. § 1638(a)(4) and 12 C.F.R. § 1026.18(d).

   b.   Mischaracterizing financed obligations as lease adjustments, thereby concealing the true amount financed and the total of payments, in violation of § 1638(a)(2), (3) and § 1026.18(b), (c).

   c.   Failing to disclose negative equity and prior lease payoff amounts rolled into the new transaction, contrary to § 1638(a)(2) and § 1026.18(b)(2).

COMPLAINT FOR DAMAGES, INJUNCTION AND DEMAND FOR JURY TRIAL

Law Office of Louis P. Dell
Attorney and Counselor at Law

Law Office of Louis P. Dell
Attorney and Counselor at Law

d.  By misstating the amount financed and total of payments through the inclusion of a false $26,980 payoff for Plaintiffs' Lexus trade-in. The dealership paid only $20,211.37 to the lienholder and appraised the vehicle at $25,000, yet inflated the amount financed by fabricating more than $6,700 in negative equity. This misrepresentation rendered the disclosures of "amount financed," "finance charge," and "total of payments" materially inaccurate under 15 U.S.C. § 1638(a) and 12 C.F.R. § 1026.18(b), (c), depriving Plaintiffs of the ability to make an informed credit decision and concealing the true cost of the transaction..

e.  Using deceptive sales practices to induce execution of a second contract after delivery, falsely representing that the first was void or clerically erroneous, in violation of § 1638(a) and § 1026.17(a) (timing and form of disclosures).

f.  Failing to provide Plaintiffs with a completed copy of each contract at consummation, in violation of § 1638(b)(1) and § 1026.17(b).

g.  Making false and misleading credit representations that the dealer would pay off the prior lease balance, in violation of § 1664 (prohibiting false or misleading credit statements).

h.  Advertising violations. Any pre-contract representations that emphasized low monthly payments without equal prominence to lease term, capitalized cost, or total obligation violated 15 U.S.C. § 1664 and 12 C.F.R. § 1026.24(d).

69.  Defendants' conduct was knowing and willful. Glendale Nissan was previously enjoined by the Federal Trade Commission's Stipulated Order for

- 17 –

Permanent Injunction (Case No. 2:16-cv-07329-CAS) from misrepresenting vehicle lease or credit terms, yet knowingly repeated the same deceptive practices here.

70.   As a direct and proximate result of these violations, Plaintiffs suffered ascertainable losses, including but not limited to:

      a.   liability for $9,454.96 on her prior lease that Defendants promised to pay;

      b.   loss of $4,799.59 trade-in equity;

      c.   inflated monthly payments and finance charges; and

      d.   loss of use of money wrongfully obtained by Defendants.

71.   Under 15 U.S.C. § 1640(a), Plaintiffs is entitled to recover:

      a.   actual damages;

      b.   25 percent of the total monthly payments due under the lease, but not less than $200 and not more than $2,000 in total statutory damages;

      c.   reasonable attorney's fees and costs; and

      d.   any other relief the Court deems just and proper.

## THIRD CAUSE OF ACTION

**(Violation of California Consumer Leasing Act, Civ. Code §§ 2985.7, et seq)**

(Against Glendale Nissan and Nissan Motor Acceptance Corp.)

72.   Plaintiffs reallege and incorporate by reference all preceding paragraphs.

73.   The transactions at issue are "consumer leases" within the meaning of Civil Code § 2985.7(b), as they involve the lease of a motor vehicle primarily for personal, family, or household use, for a term exceeding four months, and with total contractual obligations under $250,000.

- 18 –

Law Office of Louis P. Dell
Attorney and Counselor at Law

74. Defendant Glendale Nissan is a "lessor" under Civil Code § 2985.7(b), and Defendant Nissan Motor Acceptance Corp. (NMAC) is the "holder" and assignee of the lease contract as defined under Civil Code § 2985.7(g).

75. Under Civil Code §§ 2985.8 and 2987, lessors must provide a written lease contract containing clear and itemized disclosures of:

      a.   the gross capitalized cost;

      b.   each item included in that cost;

      c.   any capitalized cost reduction or trade-in allowance;

      d.   the adjusted capitalized cost;

      e.   the total of base monthly payments;

      f.   any amounts due at lease signing;

      g.   the residual value; and

      h.   the total lease obligation.

76. The Act further prohibits misrepresentation, concealment, or failure to disclose material terms of a lease, and forbids any clause or conduct that is unconscionable, misleading, or deceptive. (Civ. Code §§ 2985.8, 2985.9, 2988.5.)

77. Defendants violated the California Consumer Leasing Act and parallel provisions of the Federal Consumer Leasing Act by, among other things:

      a.   Failure to provide accurate and timely disclosures before consummation, by requiring Plaintiffs to execute two lease contracts for the same vehicle—on June 16 and June 27, 2025—each containing materially different financial terms;

      b.   Misrepresenting the purpose of the second contract as merely correcting a "clerical error," when it actually increased the gross

Law Office of Louis P. Dell
Attorney and Counselor at Law

capitalized cost, reduced the capitalized cost reduction, and raised the monthly payment from $283.64 to $479.46;

c. Failing to clearly itemize the payoff of Plaintiff's prior NMAC lease and her Lexus trade-in, in violation of Civil Code § 2985.8(b), and instead rolling negative equity into the new lease as a "Prior Lease Balance" of approximately $1,980 while leaving $9,454.96 unpaid on the prior lease;

d. Recording a fictitious Lexus payoff of $26,980—despite an appraisal of $25,000 and an actual lien payoff of $20,211.37—thereby fabricating more than $6,700 in negative equity and inflating the adjusted capitalized cost and monthly payment. This false entry concealed the true nature of the transaction and violated the single-document rule and the disclosure requirements under Civil Code §§ 2985.8(b) and 2985.8(c), which require accurate itemization of trade-in credits and prior payoffs.

e. Recording a fictitious Lexus payoff of $26,980—despite appraising the vehicle at $25,000 and paying only $20,211.37 to the lienholder—thereby fabricating negative equity and inflating the adjusted capitalized cost and monthly payment. This false entry concealed the true nature of the transaction and violated the Act's single-document rule and disclosure requirements under Civil Code §§ 2985.8(b) and 2985.8(c);

f. Omitting the required disclosure that the lessee would remain liable for any unpaid balance or deficiency on the prior lease, contrary to § 2985.8(b)(2);

COMPLAINT FOR DAMAGES, INJUNCTION AND DEMAND FOR JURY TRIAL

Law Office of Louis P. Dell
Attorney and Counselor at Law

Law Office of Louis P. Dell
Attorney and Counselor at Law

g.   Concealing and misrepresenting the true adjusted capitalized cost, thereby inflating the lease payment without Plaintiff's understanding or consent;

h.   Failing to provide a corrected written disclosure prior to the execution of the rewritten June 27 lease, in violation of Civil Code § 2985.8(a) and § 2985.8(c); and

i.   Including an unconscionable provision and misusing dealer control to pressure Plaintiffs to immediately sign the second lease while at work, without explanation or opportunity for review, in violation of Civil Code § 2988.5(a).

78.   Defendant Nissan Motor Acceptance Corp., as the holder and assignee, is liable under Civil Code §§ 2988.5 and 2988.7, because:

a.   the disclosure violations and misrepresentations are apparent on the face of the lease contracts it accepted and enforced;

b.   it continued to collect payments under a noncompliant lease; and

c.   it subsequently billed Plaintiffs for $9,454.96 relating to the prior lease, contradicting the dealership's representations that all prior balances were paid off.

79.   Defendant's conduct violated Civil Code § 2985.8(c) of the California Consumer Vehicle Leasing Act, which requires that every motor-vehicle lease contain all agreements between the parties within a single written instrument. To the extent the same conduct would constitute a violation of Civil Code § 2981.9 of the Automobile Sales Finance Act, Plaintiffs allege such violation in the alternative, as the two statutes are parallel in purpose and enforcement.

80.   As a result of Defendants' violations, Plaintiffs has suffered actual and statutory damages, including but not limited to payment of excessive lease

COMPLAINT FOR DAMAGES, INJUNCTION AND DEMAND FOR JURY TRIAL

charges, loss of trade-in equity, liability for the unpaid $9,454.96, emotional distress and inconvenience.

81.  Pursuant to Civil Code § 2988.5(b) and § 2989.4, Plaintiffs seeks:

    a.    Actual damages according to proof;

    b.    Statutory penalties of up to $2,000 per violation;

    c.    Attorney's fees and costs as authorized by § 2988.5(d); and

    d.    Rescission of the June 27, 2025 lease and restitution of all monies paid.

82.  Defendants' conduct was willful, intentional, and part of a pattern and practice of misrepresenting lease terms and rolling negative equity into new contracts, warranting enhanced statutory remedies.

**FOURTH CAUSE OF ACTION**

**(Violation of the Consumer Legal Remedies Act, Civ. Code § 1750 et seq.)**
**(Against Glendale Nissan and Nissan Motor Acceptance Corp.)**

83.  Plaintiffs reallege and incorporate by reference all preceding paragraphs.

84.  This cause of action is asserted against Glendale Nissan and Nissan Motor Acceptance Corp. and DOES 1-10.

85.  This cause of action is brought pursuant to the Consumer Legal Remedies Act (CLRA), Civil Code §§ 1750–1784, which prohibits unfair and deceptive acts and practices undertaken in transactions intended to result, or that result, in the sale or lease of goods or services to consumers.

86.  The vehicle at issue—a 2025 Nissan Ariya—constitutes a "good" within the meaning of Civil Code § 1761(a), as it was leased primarily for personal, family, and household use.

Law Office of Louis P. Dell
Attorney and Counselor at Law

87.    Defendant Glendale Nissan is a "person" engaged in a transaction intended to result in the lease of a good to a consumer within the meaning of Civil Code §§ 1761(b) and 1770.

88.    Defendant Nissan Motor Acceptance Corp. (NMAC), as the assignee, financer, and servicer of the lease, is also a "person" subject to the CLRA.

89.    On or about June 16, 2025, Plaintiffs entered into a vehicle lease with Glendale Nissan for a 2025 Nissan Ariya.

90.    Approximately eleven days later, on June 27, 2025, Glendale Nissan required Plaintiffs to sign a second lease agreement for the same vehicle, representing that the second document was merely a "clerical correction."

91.    In fact, the June 27 agreement materially altered the financial terms of the lease, increasing the gross capitalized cost, reducing the cap cost reduction, and increasing the monthly payment.

92.    The dealership represented that the new lease "paid off" Plaintiff's prior lease and Lexus trade-in and that Plaintiffs would "owe nothing further" on those vehicles. These representations were false and misleading.

93.    After the transaction, Plaintiffs received a billing notice from Nissan Motor Acceptance Corp. demanding payment of $9,454.96 for the prior lease, which Glendale Nissan had failed to pay off.

94.    Defendants also rolled negative equity from the prior vehicle into the new lease without clear disclosure, thereby disguising the true cost of the transaction.

95.    When Plaintiff's counsel sent a CLRA demand letter under Civil Code § 1782 on July 24, 2025, Glendale Nissan and NMAC failed to make a reasonable, timely correction.

1    96.    Defendants' conduct constitutes unfair methods of competition and

2  unfair or deceptive acts or practices in violation of the following CLRA

3  provisions:

4         a.    **§ 1770(a)(5) —** Representing that goods or services have

5               sponsorship, approval, characteristics, ingredients, uses, benefits,

6               or quantities which they do not have. Defendants represented

7               that the new lease satisfied prior financial obligations and was

8               merely a clerical correction, when it materially changed the lease

9               terms and left the prior balance unpaid;

10        b.    **§ 1770(a)(9) —** Advertising goods or services with intent not to

11              sell them as advertised. Defendants advertised a lease payoff and

12              "no negative equity" but delivered a contract containing a rolled-

13              in prior balance;

14        c.    **§ 1770(a)(13) —** Representing that a transaction confers or

15              involves rights, remedies, or obligations that it does not have or

16              that are prohibited by law. Defendants represented that Plaintiffs

17              would have no further liability on her prior lease, contrary to

18              fact;

19        d.    **§ 1770(a)(14) —** Representing that a consumer transaction has

20              been supplied in accordance with a previous representation

21              when it has not. Defendants represented that the second contract

22              merely corrected clerical errors but instead imposed higher

23              payments and new debt;

24        e.    **§ 1770(a)(16) —** Representing that the subject of a transaction has

25              been supplied in accordance with a previous representation

26              when it has not. The vehicle was leased under materially

27              different terms than promised;

28

- 24 –

f.  **§ 1770(a)(19)** — Inserting an unconscionable provision in a contract. The rewritten lease, executed under false pretenses, imposed additional debt and forfeited Plaintiff's trade-in equity.

96.  Defendants further violated the CLRA by recording and relying on a fictitious $26,980 payoff amount for Plaintiffs' Lexus trade-in, which inflated the lease price and concealed the existence of rolled-in debt. This practice misrepresented the transaction's true cost and violated Civil Code §§ 1770(a)(5), (9), and (14). The dealership's assurances that the prior obligations were fully satisfied, when they were not, constituted intentional deceit designed to induce Plaintiffs to execute the rewritten lease.

97.  As a direct and proximate result of Defendants' misrepresentations and omissions, Plaintiff:

a.  incurred financial loss by paying a higher lease payment and down payment;

b.  lost approximately $4,799.59 in trade-in equity;

c.  remains liable for $9,454.96 on a prior lease she was told was paid off; and

d.  suffered anxiety, distress, and loss of use of funds.

98.  Defendants' violations were willful and knowing within the meaning of Civil Code § 1780(b), warranting an award of punitive and statutory damages.

99.  Plaintiffs provided written notice of these violations to Defendants on July 24, 2025, as required by Civil Code § 1782(a).

100. Defendants failed to correct or rescind the transaction within 30 days of receipt.

Law Office of Louis P. Dell
Attorney and Counselor at Law

## FIFTH CAUSE OF ACTION

### (Violation of Business & Professions Code Section 17200 et seq.)

101.   Plaintiffs reallege and incorporate by reference all preceding paragraphs.

102.   This cause of action is asserted against Glendale Nissan and Nissan Motor Acceptance Corp. and DOES 1-10.

103.   California Business & Professions Code § 17200, et seq., prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice . . ." and conduct which is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

104.   The defendant's acts and practices are likely to deceive, constituting a fraudulent business act or practice.

105.   The defendant engaged in deceptive business practices with respect to sales of motor vehicles, options, and accessories.

106.   The Plaintiffs alleges that by engaging in the above-described acts and/or practices as alleged herein, the defendant has violated Federal and State consumer statutes and regulations and said predicate acts are therefore per se violations of California Business and Professions Code Section 17200, et seq.

107.   The Plaintiffs alleges that the defendant's misconduct, as alleged herein, gave, and have given, the defendant an unfair competitive advantage over its competitors. The scheme implemented by the defendant is designed to defraud California consumers and enrich the defendant.

108.   By reason of the foregoing, the defendant has been unjustly enriched and should be required to disgorge its illicit profits and/or make restitution to Plaintiffs and other California consumers who have been harmed, and/or be

COMPLAINT FOR DAMAGES, INJUNCTION AND DEMAND FOR JURY TRIAL

Law Office of Louis P. Dell
Attorney and Counselor at Law

enjoined from continuing in such practices pursuant to California Business & Professions Code Sections 17203 and 17204.

109.   Plaintiffs seeks restitution of all money paid under the June 27, 2025 lease, disgorgement of ill-gotten gains, and injunctive relief prohibiting Defendants from engaging in similar "yo-yo" or misrepresented lease rewrites in the future.

110.   Plaintiffs also seeks attorney's fees and costs pursuant to Code of Civil Procedure § 1021.5 and other applicable law.

**SIXTH CAUSE OF ACTION AGAINST SURETY ON DEALER BOND**
**(Against Surety on Motor Vehicle Dealer Bond – Violation of Vehicle Code § 11710 et seq.)**

111. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

112. This cause of action is asserted against Great American Insurance Company and DOES 1-10.

113. At all relevant times, Defendant K Motors SJS, LLC dba Glendale Nissan was a licensed motor vehicle dealer under California Vehicle Code § 11700 et seq. and was required to maintain a surety bond in the amount of $50,000, conditioned upon compliance with all provisions of the Vehicle Code and payment of all obligations arising from its business operations.

114. Defendant Great American Insurance Company ("Surety") issued and maintained a Motor Vehicle Dealer Bond (Bond No. F364270) on behalf of Glendale Nissan pursuant to Vehicle Code § 11710(a), which bond was in full force and effect at all relevant times.

115. Under Vehicle Code § 11711(b), the bond is for the benefit of any person who suffers loss or damage by reason of the dealer's fraudulent

representations, deceit, or violation of law in connection with the sale or lease of a vehicle.

116. Plaintiffs qualify as persons within the meaning of § 11711(b), having sustained losses directly caused by Glendale Nissan's unlawful and fraudulent conduct in connection with the June 16 and June 27, 2025 vehicle lease transactions.

117. Glendale Nissan, through its General Manager Luis Santillan and Finance Manager, engaged in a pattern of fraud and deception, including but not limited to:

118. Leasing Fraud:

a.   Inducing Plaintiffs to execute two separate lease contracts for the same vehicle under the false pretense that the second contract merely "corrected clerical errors," while concealing material increases to capitalized cost, monthly payments, and total lease obligation;

b.   Misrepresenting that the dealership would pay off Plaintiffs' prior 2023 Nissan Ariya lease and Lexus trade-in in full, while instead rolling negative equity into the new lease and leaving Plaintiffs liable for $9,454.96;

c.   Failing to provide accurate or updated Regulation M disclosures and mischaracterizing rolled-in debt in violation of the Consumer Leasing Act (15 U.S.C. §§ 1667–1667f).

119. Credit and Financing Fraud:

a.   Misstating or concealing the finance charge, annual percentage rate, and total of payments, and altering the transaction after delivery in violation of the Truth in Lending Act (15 U.S.C. §§ 1601 et seq.) and Regulation Z (12 C.F.R. Part 1026);

– 28 –

b.   Misrepresenting that the dealer, not Plaintiffs, was responsible for prior lease balances and obtaining signatures through coercion and misinformation.

120. Consumer Fraud and Deceptive Practices:

a.   Making false and misleading representations in violation of the Consumer Legal Remedies Act (Civ. Code § 1750 et seq.), including representations that the transaction involved no new obligations and that all prior debts were satisfied;

b.   Engaging in "yo-yo" or "spot-delivery" tactics—compelling

c.   Plaintiffs to re-sign contracts post-delivery under false pretenses—constituting unlawful and deceptive business practices.

121. Statutory and Regulatory Violations:

a.   Fraudulent representations and deceit in violation of Vehicle Code § 11705(a)(10);

b.   Failure to pay off a lien or prior lease obligation, in violation of Vehicle Code § 11711(a); and

c.   Failure to comply with the Consumer Leasing Act (15 U.S.C. §§ 1667–1667f) and the Truth in Lending Act (15 U.S.C. §§ 1601 et seq.), including Regulation M (12 C.F.R. Part 1013) and Regulation Z (12 C.F.R. Part 1026), by failing to provide accurate, clear, and conspicuous lease disclosures, by issuing multiple inconsistent lease contracts in violation of the single-document requirement, and by concealing rolled-in negative equity and other undisclosed finance charges..

Law Office of Louis P. Dell
Attorney and Counselor at Law

- 29 –

Law Office of Louis P. Dell

Attorney and Counselor at Law

122. Glendale Nissan's conduct constitutes fraud, deceit, and statutory violations within the scope of Vehicle Code § 11711(b), rendering the Surety jointly and severally liable up to the penal sum of the bond.

123. Under Vehicle Code § 11711(b), Defendant Great American Insurance Company, as surety on Glendale Nissan's motor vehicle dealer bond, is liable to Plaintiffs for the full amount of their actual losses sustained by reason of the dealer's fraudulent and unlawful acts, including all amounts paid under the rescinded transaction, up to the penal sum of the bond ($50,000). Plaintiffs' actual loss, including down payment, trade-in equity, lease payments, and payoff obligations on the prior vehicle, is estimated to exceed $17,000, for which the surety is jointly liable with the dealer.

124. Accordingly, the Surety is obligated to pay Plaintiffs for the full amount of losses proximately caused by Glendale Nissan's fraudulent, deceptive, and unlawful conduct, including all damages recoverable under the CLRA, TILA, and Consumer Leasing Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ANI ARATOUNIANS and NILTON NEYRA RAMOS pray for judgment against Defendants K MOTORS SJS, LLC dba GLENDALE NISSAN; NISSAN MOTOR ACCEPTANCE COMPANY LLC; GREAT AMERICAN INSURANCE COMPANY; and DOES 1–10, and each of them, jointly and severally, as follows:

1.    Rescission of the June 16, 2025 and June 27, 2025 lease agreements for the 2025 Nissan Ariya, and restitution of all monies paid, including down payments, trade-in value, and lease payments;

2.    An order requiring Defendants to pay off in full any remaining balance or deficiency on Plaintiffs' prior 2023 Nissan Ariya lease and Lexus trade-in, including the $9,454.96 invoice issued by NMAC;

3.    In the event of rescission, for restitution of all amounts paid and incurred under the lease, including down payment, trade-in value, lease payments, insurance, registration, and incidental expenses, offset by any reasonable use value as permitted by law.

4.    For restitution and disgorgement of all sums unlawfully collected under noncompliant or deceptive contracts, including all payments made to Defendants or their assignees under the June 27, 2025 lease;

5.    Actual damages in an amount according to proof at trial, including but not limited to increased monthly payments, loss of trade-in equity, and amounts billed under the prior lease;

6.    Statutory damages as provided under:

    a.    Civil Code § 1780(a) (CLRA);

    b.    15 U.S.C. § 1640(a) (TILA);

    c.    15 U.S.C. § 1667d(a) (Consumer Leasing Act);

    d.    Civil Code § 2988.5 (Cal. Leasing Act);

    e.    Business and Professions Code § 17206 (UCL); and

    f.    Vehicle Code § 11711(b) (Dealer Bond Statute);

7.    Punitive and exemplary damages pursuant to Civil Code § 1780(a)(4) for Defendants' willful, malicious, and fraudulent conduct, including repeated "yo-yo" financing practices;

8.    Injunctive relief under Civil Code § 1780(a)(2) and Business & Professions Code § 17200 et seq., enjoining Defendants from further unlawful and deceptive leasing practices;

- 31 –

9.  Disgorgement and restitution of all ill-gotten gains obtained through Defendants' unlawful conduct;

10.  Enforcement of the dealer surety bond, requiring Great American Insurance Company (and any co-surety) to pay the loss suffered by Plaintiffs due to Glendale Nissan's fraudulent and unlawful acts;

11.  Attorney's fees and costs of suit, as authorized under:

    a.  Civil Code § 1780(e) (CLRA);

    b.  Civil Code § 1988.5(a)(3) (Cal. Leasing Act);

    c.  15 U.S.C. § 1640(a)(3) (CLA & TILA);

    d.  Code of Civil Procedure § 1021.5 (public interest enforcement); and

    e.  all other applicable provisions of law;

11.  Prejudgment interest as permitted by law; and

12.  Such other and further relief as the Court deems just and proper in the interests of justice.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a jury trial.

Dated: October 10, 2025          Law Office of Louis P. Dell

                                  /s/ Louis P. Dell

                                  Attorney for Plaintiffs,
                                  ANI ARATOUNIANS,
                                  NILTON NEYRA RAMOS

Law Office of Louis P. Dell
Attorney and Counselor at Law

COMPLAINT FOR DAMAGES, INJUNCTION AND DEMAND FOR JURY TRIAL